# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 12-CV-2984 (JFB)(SIL)

———————————

## ANDREW MORRIS,

Plaintiff,

VERSUS

## TOWN OF ISLIP,

Defendant.

———————————

**MEMORANDUM AND ORDER**
September 22, 2014

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Andrew Morris ("Morris" or "plaintiff") brings this action against defendant Town of Islip ("defendant" or "the Town"), alleging employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA").[1] Specifically, plaintiff alleges that defendant (1) discriminated against plaintiff on account of his disability by failing to accommodate plaintiff's requests for reasonable accommodation, assigning him elevated or overhead work, denying his request for an emergency personal day, and directing him to come to work to be evaluated for light duty and discharging him without proper notice after a second injury in July 2009; and (2) retaliated against plaintiff through similar conduct for filing a disability discrimination complaint with the New York State Division of Human Rights ("NYSDHR") in April 2009.

The Town moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing: (1) the discrimination claims must be dismissed because plaintiff cannot establish an ADA-qualifying disability for certain claims, or that he was an otherwise "qualified individual" for purposes of the ADA, (2) the discrimination claims fail on their merits because the uncontroverted evidence demonstrates that the Town provided reasonable accommodations, plaintiff did not suffer adverse employment actions, and the Town lawfully terminated plaintiff's employment pursuant to New York Civil Service Law § 71; and (3) plaintiff cannot establish a retaliation claim because he cannot set forth a prima facie case of retaliation or show that any decisions were pretextual. For the following reasons, the Court grants the motion for summary judgment in its entirety.

---

[1] The Court previously dismissed plaintiff's state law claims. (*See* Order, Docket No. 18.)

The first six causes of action—which relate to the period from early June 2009 to July 23, 2009—cannot survive summary judgment for several reasons. First, it is uncontroverted that Morris, upon returning to work in June 2009, provided documentation from his treating orthopedist that indicated that plaintiff could return to work on June 8, 2009. The documentation did not list any physical restrictions or limitations. Moreover, prior to July 23, 2009, plaintiff never provided any medical documentation to indicate he was restricted in his ability to perform his job functions. In fact, plaintiff testified that he tried to get such documentation from his doctor, and his doctor refused to provide it. Thus, given these uncontroverted facts, no rational jury could conclude that plaintiff suffered from a disability under the ADA during this period. Second, even assuming *arguendo* that a disability could be established, there is uncontroverted evidence that overhead work is an essential function of plaintiff's job and, thus, the employer was not required to eliminate that function to accommodate an individual with a disability. Third, even assuming *arguendo* that the Town had to provide a reasonable accommodation, there is uncontroverted evidence that it did— namely, plaintiff acknowledged that his supervisors provided him with a helper unless there was a "freak thing" where one was unavailable. It is uncontroverted that plaintiff had a helper on twenty of the twenty-nine days he worked, including the date of his injury (*i.e.*, July 23, 2009). Finally, to the extent plaintiff asserts a claim based upon a temporary denial of a personal day (which was later restored to plaintiff), no rational jury could conclude that such an act is an adverse employment action either under the standard for a disability discrimination claim, or under the more liberal standard for adverse action under a retaliation claim. In short, plaintiff has failed to submit any evidence that raises a genuine issue of disputed fact as to any of these claims for disability discrimination or retaliation.

With respect to the seventh cause of action, an ADA discrimination and retaliation claim relating to the period after July 23, 2009, the Court concludes that this cause of action also cannot survive summary judgment. First, there can be no disability discrimination claim for that period because it is uncontroverted that, as a result of the July 23, 2009 injury, plaintiff was totally disabled and, thus, not otherwise qualified to perform the essential functions of his job, with or without a reasonable accommodation. Second, it is undisputed that plaintiff was separated from service for more than one year by reason of disability resulting from occupational therapy, and plaintiff provides no evidence or legal argument to raise a genuine issue of fact as to defendant's decision to terminate plaintiff under Section 71 of the New York Civil Service Law. In fact, plaintiff's counsel did not even argue in his opposition papers that plaintiff's termination was unlawful or discriminatory. Finally, to the extent plaintiff asserts that the constant light duty evaluation requests were discriminatory or retaliatory, the Town has submitted uncontroverted evidence that such evaluations were requested pursuant to a provision in the collective bargaining agreement with plaintiff's union. Moreover, plaintiff has submitted no evidence of any negative consequence that resulted. In short, plaintiff has submitted no evidence that would allow a rational juror to find that such requests for evaluations under that provision were discriminatory or retaliatory.

## I. BACKGROUND

### A. Factual Background

The Court takes the following facts from the parties' affidavits, depositions, exhibits, and defendant's Rule 56.1 Statement of Facts.[2] Contrary to Local Rule 56.1(b), plaintiff did not file a Rule 56.1 Statement of Facts in response to defendant's submission. In fact, plaintiff submitted no evidence in connection with his opposition, only a memorandum of law. Accordingly, the Court could deem every fact in defendant's submission admitted for purposes of this motion. L.R. 56.1(c); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (Where "the opposing party [] fails to controvert a fact so set forth in the [] Rule 56.1 statement, that fact will be deemed admitted."); *Litchhult v. USTRIVE2, Inc.*, No. 10-CV-3311 (JFB)(ARL), 2013 WL 3491076, at *2 n.1 (E.D.N.Y. July 10, 2013) (detailing standard). However, in an abundance of caution, the Court has examined the record carefully and concludes that the facts in defendant's Rule 56.1 Statement are supported by admissible evidence, and plaintiff has not pointed to any evidence in the record to controvert such facts. In addition, the Court's own independent review of the record has not uncovered any evidence to controvert the facts contained in defendant's Rule 56.1 Statement. The Court construes the facts in the light most favorable to plaintiff, the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).

#### 1. Plaintiff's Employment

Plaintiff began working for the Town in May 1995, starting as a Custodial Worker I

based at Islip MacArthur Airport. (Def. 56.1 ¶¶ 1–2.) In March 1997, he became a Maintenance Mechanic I ("MMI"). (*Id.* ¶ 3.) As part of his job responsibilities, plaintiff carried heavy light fixtures, which sometimes weighed as much as one to two hundred pounds. (*Id.* ¶ 5.) He also had to drive, carry ladders, and perform overhead and elevated work. (*Id.* ¶ 6.) Other responsibilities included replacing broken lights, changing light fixtures, repairing electrical outlets, and working on ceiling and exhaust fans. (*Id.* ¶ 7.) In July 1998, Morris transferred from MacArthur Airport to the Town's Department of Public Works Maintenance Bureau ("the Bureau"). (*Id.* ¶ 8.) After his transfer, Morris continued to perform the heavy lifting, driving, and overhead work required of the MMI position. (*Id.* ¶ 9.)

Roughly fifteen maintenance mechanics were assigned to the Bureau, spread fairly evenly across three job classifications—I, II, and III. (*Id.* ¶10.) Approximately four held the MMI title. (*Id.* ¶ 11.) MMIs generally serve as helpers for the MMIIs and MMIIIs; they are assigned according to the magnitude of the work to be undertaken, and might not be assigned to mechanics that are performing work of a less intensive nature. (*Id.* ¶¶ 12–13.)

In August 2001, plaintiff was promoted to MMIII, a title that requires that the employee be in a "physical condition commensurate with the demands of the position." (*Id.* ¶¶ 14–15.) The work Morris performed as an MMI, *i.e.*, heavy lifting, overhead work, and elevated work, also was required of the MMIII title. (*Id.* ¶¶ 16–17.) According to Morris, "sometimes" the MMIII was provided with a helper. (*Id.* ¶ 18.) As of January 2, 2007, plaintiff performed whatever "electrical work within the Town of Islip [that] needed to be done." (*Id.* ¶ 19.) His electrical responsibilities

[2] Although the Rule 56.1 Statement of Fact contains specific citations to the record, the Court cites to the statements rather than to the underlying citations.

included overhead work, elevated work, and lifting of heavy objects weighing between one-hundred and two-hundred pounds. (*Id.* ¶ 20.) Plaintiff also performed "a lot more ballast and overhead lighting" work after his promotion. (*Id.* ¶ 21.)

### 2. Plaintiff's Alleged Disability and Return to Work

On January 2, 2007, plaintiff injured his shoulder slipping off a truck and was out of work until January 22, 2007. (*Id.* ¶¶ 22–23.) Two years later, on January 30, 2009, plaintiff had surgery on the injured shoulder. (*Id.* ¶ 24.) For a time after his surgery, plaintiff was "one hundred percent disabled." (*Id.* ¶ 25.) He was unable to perform the "normal" and "everyday" functions of his job title, with or without a reasonable accommodation. (*Id.* ¶ 26.)

In April 2009, while out work because of the surgery and on workers' compensation, plaintiff filed a complaint with the NYSDHR. (*Id.* ¶ 27; *see* NYSDHR Complaint, Finkel Aff. Ex. E.) Morris alleged that the Town's requests for him to come in for a light duty evaluation, and its decision to subject plaintiff to additional scrutiny, were discriminatory. (Def. 56.1 ¶ 28.) NYSDHR conducted an investigation and found that the Town's attempt to monitor and evaluate plaintiff's physical condition and capacity to perform light duty work was in accordance with the "policy and procedure set forth in the Collective Bargaining Agreement and rules governing Worker's Compensation," which was a "legitimate, non-discriminatory reason" for the Town's actions. (*Id.* ¶ 29; *see* NYSDHR Finding, Finkel Aff. Ex. F.) Accordingly, NYSDHR found no probable cause and dismissed the complaint. (Def. 56.1 ¶ 30.)

Plaintiff returned to work on or about June 9, 2009. (*Id.* ¶ 31.) Upon his return, he provided the Town with medical documentation from his treating orthopedist, Dr. Joshua Dines. (*Id.* ¶ 32.) Dr. Dines stated that plaintiff "may return to work on 6-8-09." (*Id.* ¶ 33; *see* Dines Letter, Abbate Affidavit Ex. I.) Dr. Dines did not list any physical restrictions or limitations. (*See generally* Dines Letter.) Between his return in June 2009 and subsequent injury on July 23, 2009, plaintiff never provided the Town with any medical documentation to indicate that he was restricted or limited in his ability to perform his job functions. (Def. 56.1 ¶ 35.) According to Morris, he tried to get a letter from Dr. Dines to indicate what plaintiff's restrictions were before July 23, 2009, but Dr. Dines "would not give it to me saying anything else." (*Id.* ¶ 36; Morris Dep. at 136:14–22, Finkel Aff. Ex. C.)

After he returned to work, Morris claims that he was "for the most part" able to perform the essential functions of his job title. (Def. 56.1 ¶ 37.) He described "lifting and reaching" as his "biggest problem," but he performed overhead work to the best of his ability.[3] (*Id.* ¶¶ 38–39.) According to plaintiff, he spoke with his supervisors and asked them to let him have "at least one or two helpers" if there was a "big" job coming up. (*Id.* ¶ 40.) By plaintiff's own account, until his injury in July 2009, he was provided with helpers "[f]or the most part," though "[n]ot every day."[4] (Morris Dep. at

---

[3] It is uncontroverted that the Town assigned Morris the same type of work upon his return to surgery as he had been assigned prior to his surgery, including the following tasks: installation of a fan and electrical switch, installation of electrical switches for lighting replacement of ceiling tiles, rewiring a fuse and changing a bulb at the marina, removing piping from a roof, repairing an exit light, fixing flood lights, examining breakers and dryers, and installing ceiling fans and new lights. (Def. 56.1 ¶¶ 48–49.)

[4] Helpers also were provided before the injury. (*See* Morris Dep. at 143:9–14 (Q: Well, didn't the helpers work with you before you were injured? A: Yes. Q: So nothing changed after your injury. A: No. They still helped me.").)

145:4–10.) His supervisors provided a requested helper if it was "feasible"—unless "there were some freak thing where a lot of people were out or something like that, but for the most part it wasn't a problem getting me a helper." (*Id.* at 145:13.) A helper was assigned to Morris twenty of the twenty-nine days that he worked before his injury on July 23, 2009. (Def. 56.1 ¶ 44.) During this time, Bobby Powers was the only other MMIII who performed electrical work. (*Id.* ¶ 45.) Powers handled the "bigger jobs" and was only assigned helpers on nine of the thirty-one days that he worked during the same time period. (*Id.* ¶¶ 45–47.)

### 3. Emergency Personal Leave Day

On or about April 29, 2009, the Acting Commissioner of Public Works issued a memorandum to employees advising them that, in accordance with the Collective Bargaining Agreement, "Emergency Absences (PV or Personal Leave Day) with less than three (3) days notice will require an explanation and/or documentation," and the failure to provide an explanation "may result in the denial of the paid leave." (*Id.* ¶ 50; Emergency Absences Notice, Abbate Aff. Ex. M.) During 2009, the Commissioner requested explanations from other employees twenty-nine times, twelve of those coming before July 9, 2009. (Def. 56.1 ¶ 53.) Employees provided various reasons for their requests (which were approved), including child care issues, car trouble, or home maintenance concerns. (*Id.* ¶ 54; *see* Leave Requests, Abbate Aff. Ex. N.)

On July 9, 2009, plaintiff took a day off, requesting that it be considered a paid emergency personal day. (Def. 56.1 ¶ 51.) The Town asked plaintiff to explain his request. (*Id.* ¶ 52.) He stated, "I took an emergency personal day." (*Id.* ¶ 55; Morris Leave Request, Abbate Aff. Ex. O.) The Town then denied plaintiff's request for leave. (Def. 56. 1 ¶ 56.) On July 21, 2009, plaintiff filed a grievance relating to that denial. (*Id.* ¶ 57.) He wrote, "I feel I am being singled out due to my shop steward duties and past grievance. I would like the 8 hours I was docked [pay] returned." (*Id.* ¶ 58; Leave Request Grievance, Abbate Aff. Ex. P.) The grievance did not allege disability discrimination. The Town held a hearing on the grievance in late 2009 or early 2010. (*See* Def. 56.1 ¶ 60.) At the hearing, Morris explained why he used the paid emergency personal day. (*Id.* ¶ 61.) The Town then rescinded the denial, granted plaintiff's request, and restored the eight hours of pay that had been docked for using the day without explanation.[5] (*Id.* ¶ 62.)

### 4. July 2009 Injury and Discharge

On July 23, 2009, Morris suffered another shoulder injury while working at the marina. (*Id.* ¶ 63.) He had been assigned a helper on that day. (*Id.* ¶ 64.) Since then, by his own account, Morris has been "totally disabled" and not been physically capable of performing the job duties of an MMIII, even with a helper. (*Id.* ¶ 65.) Plaintiff's orthopedist corroborated this physical condition. (*Id.* ¶ 66; *see* Physician's Notes, Abbate Aff. Exs. S, T, U, V, W, X, Y, Z, AA (stating that plaintiff is totally disabled and may not return to work).) In November 2009, plaintiff applied to New York State for a permanent disability retirement pension. (Def. 56.1 ¶ 67.) At that time, plaintiff had no intention of ever returning to

---

[5] According to a letter from Robert Finnegan, the Director of the Office of Labor Relations and Personnel, during the hearing, Morris did not raise anti-union issues, refer to any past grievance, or argue that the policy was a change in practice or contract. (Finnegan Letter, Abbate Aff. Ex. Q.) Instead, Morris said he took the day off because of the emergency hospitalization of an immediate family member. (*Id.*) Finnegan, therefore, found that Morris had satisfied the disclosure requirements. (*Id.*)

work. (*Id.* ¶ 68.) He represented to the State's examining physician that he was unable to perform his job duties. (*Id.* ¶ 69.)

As of August 24, 2010, plaintiff had not returned to work. (*Id.* ¶ 71.) By then, he had been absent from work for more than one continuous year. (*Id.* ¶ 72.) As a result of that continued absence, the Town separated plaintiff from his employment, sending him a letter stating, "In accordance with the agreement between the Town of Islip and International Brotherhood of Teamsters, Local #237, and pursuant to Section 71 of the Civil Service Law, you will be removed from the payroll as of August 31, 2010." (*Id.* ¶ 73; *see* Separation Notice, Abbate Aff. Ex. BB.) New York granted plaintiff's permanent disability retirement pension in May 2011, finding him "permanently incapacitated from the performance of his duties." (Def. 56.1 ¶ 70; *see* Disability Services Letter, Abbate Aff. Ex. CC.)

## B.   Procedural Background

Plaintiff filed the complaint on June 14, 2012. Defendant moved to dismiss the New York State Human Rights Law claims on September 19, 2012. The Court granted the motion during a telephone conference on November 26, 2012. Defendant filed its answer on January 7, 2013. Defendant moved for summary judgment on February 4, 2014. Plaintiff opposed on March 19, 2014. Defendant replied on April 2, 2014. The Court held oral argument on May 7, 2014. The Court has fully considered the submissions of the parties.

## II.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

Plaintiff's first, third, fifth, and seventh causes of action allege disability discrimination: (1) Claim 1: upon his return from a work-related injury in June 2009, the Town refused to assign plaintiff a helper as a reasonable accommodation; (2) Claim 3: upon his return from a work-related injury in June 2009, the Town "regularly" assigned plaintiff "elevated or overhead work"; (3) Claim 5: upon his return from a work-related injury in June 2009, the Town denied plaintiff's request for an emergency personal day; and (4) Claim 7: after his second injury in July 2009, the Town repeatedly directed plaintiff to be evaluated for light duty at a time when he was "totally disabled and unable to work," and then discharged him without proper notice. (Complaint ¶¶ 37, 41, 50, 62.) Plaintiff's second, fourth, sixth, and seventh causes of action allege retaliation: (1) Claim 2: plaintiff was denied helpers in

retaliation for filing a disability discrimination complaint against the Town in April 2009; (2) Claim 4: plaintiff was assigned overhead and elevated work in retaliation for the filing; (3) Claim 6: the Town denied plaintiff's paid emergency personal day request in retaliation for the filing; and (4) Claim 7: after his second injury in July 2009, the Town retaliated against plaintiff by harassing him to come in for evaluation for light duty assignments and by discharging him without proper notice. (*Id.* ¶¶ 30, 39, 44, 52, 63.) The Court addresses each claim in turn.

### A. ADA Discrimination Claims

The first, third, and fifth causes of action center on events alleged to have occurred between June 9, 2009, and July 23, 2009. The seventh cause of action arises from events alleged to have taken place after July 23, 2009. Defendant argues that the first three causes of action must be dismissed because (1) plaintiff did not have an ADA-qualifying disability; (2) the failure to accommodate claim fails as a matter of law because not only was the Town not obligated to provide reasonable accommodations for his essential job functions, but plaintiff also cannot show that, even if reasonable accommodations were needed in order for him to complete the essential job functions, defendant did not provide him with such; (3) defendant did not have to eliminate essential job functions; and (4) the temporary denial of the paid emergency personal day is not actionable as a matter of law. Defendant argues that the seventh cause of action must be dismissed because (1) after the July 2009 injury, plaintiff was not otherwise qualified to perform the essential functions of his job, with or without a reasonable accommodation; (2) the Town requested that plaintiff report for evaluation and also discharged him pursuant to the Collective

Bargaining Agreement and N.Y. Civ. Serv. Law § 71; and (3) plaintiff otherwise failed to exhaust his available administrative remedies. For the reasons set forth below, the Court agrees with defendant.

### 1. Claims 1, 3, and 5

### a. Whether Plaintiff Had an ADA-Qualifying Disability

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The plaintiff "bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination." *Heyman v. Queen Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999); *see also Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir. 1996) ("A plaintiff who raises a disability discrimination claim bears the initial burden of establishing a prima facie case."). To make out a prima facie case, a plaintiff must show that (1) the employer is subject to the ADA;[6] (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered adverse employment action because of her disability. *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir. 1998)).

A threshold question is whether the plaintiff has a disability within the meaning of the ADA. *Graham v. Three Vill. Cent.*

*Sch. Dist.*, No. 11-CV-5182, 2013 WL 5445736, at *10 (E.D.N.Y. Sept. 30, 2013). The ADA Amendment Act of 2008 ("ADAAA") defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

As relevant in this case, "no failure to accommodate claim can be made, as a matter of law, for an individual who was 'regarded as' disabled, rather than who was actually disabled. In other words, the 'regarded as' theory of disability is no longer actionable in the context of a failure to accommodate claim." *Graham*, 2013 WL 5445736, at *11 (citing 42 U.S.C. § 12201(h)); *see also Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011) ("[T]he ADAAA clarified that an individual 'regarded as' disabled (as opposed to actually disabled) is not entitled to a 'reasonable accommodation.'" (quoting 42 U.S.C. § 12201(h))). Further, with respect to the other pre-July 23, 2009 discrimination claims, there is no evidence from which a reasonable jury could conclude that that plaintiff was regarded by the Town as having an ADA-qualifying disability from June 9 to July 23, 2009, as required. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999) (for purposes of the "regarded as" prong, requiring the covered entity to "believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the

---

[6] This is undisputed in this case.

impairment is not so limiting").[7] Dr. Dines cleared plaintiff to return to work and did not list any limitations, and there is no evidence that the Town knew or thought that plaintiff had any restrictions from work. (*See* Def. 56.1 ¶¶ 31–40.) Plaintiff was assigned and performed the identical work as before his surgery, and nothing indicates that the Town changed its expectations of his performance, either. (*See id.* ¶¶ 48–49.) In fact, plaintiff did not specifically raise a "regarded as" theory of liability in his opposition. Thus, for purposes of the first three discrimination claims, this Court only addresses in more detail below whether there is evidence from which a rational jury could find that plaintiff was disabled or had a record of disability.

### i. Whether Plaintiff Had a Physical Impairment that Affects a Major Life Activity

For a plaintiff to establish that she has a disability under the statute's first subsection, she must "(1) show that [she] suffers from a physical or mental impairment, (2) identify the activity claimed to be impaired and establish that it constitutes a major life activity, and (3) show that [her] impairment substantially limits the major life activity previously identified." *Green v. DGG Props. Co.*, No. 11-CV-1989 (VLB), 2013 WL 395484, at *9 (D. Conn. Jan. 31, 2013) (quoting *Kravtsov v. Town of Greenburg*, No. 10-CV-3142(CS), 2012 WL 2719663, at *10 (S.D.N.Y. July 9, 2012)) (internal quotation marks omitted). Pursuant to the ADAAA, major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning,

reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). Major life activities also may include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* Notably, post-ADAAA, "major life activities no longer need to be of 'central importance.'" *D'Entremont v. Atlas Health Care Linen Servs., Co.*, No. 12-CV-0060 (LEK/RFT), 2013 WL 998040, at *6 (N.D.N.Y. Mar. 13, 2013) (quoting *Sam-Sekur v. Whitmore Grp., Ltd.*, No. 11-CV-4938, 2012 WL 2244325, at *6 (E.D.N.Y. June 15, 2012)); *see also* 42 U.S.C. § 12102(2)(A).

The ADA does not define what constitutes a substantial limitation. *See Kravtsov*, 2012 WL 2719663, at *10 (stating that "[t]he ADA does not define the term 'substantially limited,' but post-ADAAA regulations" clarify the term). However, it is clear that the standard "is not meant to be [] demanding," 29 C.F.R. § 1630.2(j)(1)(i), and "should not demand extensive analysis," *id.* 1630.2(j)(1)(iii). Thus, an impairment will be considered a disability under the ADA "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Risco v. McHugh*, 868 F. Supp. 2d 75, 108 n.47 (S.D.N.Y. 2012) (quoting 29 C.F.R. § 1630.2(j)1)(1)(ii)) (internal quotation marks omitted). An impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Kravtsov*, 2012 WL 2719663, at *10 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)) (internal quotation marks omitted); *see also Brandon v. O'Mara*, No. 10-CV-5174(RJH), 2011 WL 4478492, at *7 (S.D.N.Y. Sept.

---

[7] *Sutton* was superseded by statute on other grounds. *See, e.g.*, *Young v. Precision Metal Prods., Inc.*, 599 F. Supp. 2d 216, 223 (D. Conn. 2009).

28, 2011) ("[T]he revised EEOC regulations provide that [a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population[; t]hat is, while [a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting, . . . the substantially limits analysis is comparative." (second and fourth alterations in original) (citation and internal quotation marks omitted)).

Plaintiff claims that the injury to his shoulder rendered him "unable to lift his right arm over his head" and prompted his doctor to "restrict[] him from lifting more than 15 pounds." (Complaint ¶ 32.) Defendant argues that there is no evidence that this alleged impairment substantially limited a major life activity. The Court agrees with the Town.

In the instant case, plaintiff's self-serving, conclusory allegation of disability is belied by "the record evidence that plaintiff was cleared by his doctor," and, thus, standing alone, it "cannot support a finding by a rational fact finder that plaintiff was substantially limited" in a major life activity. *McDonald v. City of New York*, 786 F. Supp. 2d 588, 608 (E.D.N.Y. 2011) ("These vague and ambiguous descriptions by plaintiff of his limitations, coupled with the record evidence that plaintiff was cleared by his doctor to walk up to three miles per day cannot support a finding by a rational factfinder that plaintiff was substantially limited in the major life activities of walking or standing."). In addition, with respect to the claimed lifting limitation, numerous courts have held, "as a matter of law, that the weight limitation similar to that claimed by plaintiff is insufficient to establish a substantial limitation on one's ability to lift,

work, or perform any other major life activity." *Id.* at 609 (discussing claimed limitation of inability to lift weighs exceeding twenty pounds); *see also Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998) (finding two plaintiffs' inability to lift "very heavy objects" or "anything heavy," respectively, insufficient to establish substantial limitation on ability to lift as compared to average person); *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1207 (8th Cir. 1997) (explaining that a "general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA"); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) (same, for twenty-five pound lifting limitation); *Aucutt v. Six Flags, Over Mid–Am., Inc.*, 85 F.3d 1311, 1319 (8th Cir. 1996) (same, for twenty-five pound lifting restriction); *Gittens v. Garlocks Sealing Techs.*, 19 F. Supp. 2d 104, 111 (W.D.N.Y. 1998) (same, for thirty pound lifting restriction).[8]

---

[8] Plaintiff's reliance on the NYSDHR's finding of "probable cause," as to his second complaint in 2010, is unavailing. As a threshold matter, plaintiff has not shown that the finding of probable cause would have preclusive effect in New York State courts or in this Court, particularly because there was no final administrative determination, and no state court reviewed the NYSDHR's findings. *See Macer v. Bertucci's Corp.*, No. 13-CV-2994 (JFB)(ARL), 2013 WL 6235607, at *4–6 (E.D.N.Y. Dec. 3, 2013) (detailing claim preclusion standard). Moreover, plaintiff did not submit the entire NYSDHR report and, thus, the Court does not know what information the NYSDHR had before it in reaching that initial determination. Thus, the NYSDHR's finding itself has no probative value, especially in light of the uncontroverted evidence that defendant has submitted to this Court regarding the disability and retaliation claims. As the Second Circuit has noted, under such circumstances, that initial finding is not enough to preclude summary judgment:

> Plaintiffs assert that the mere existence of the initial CCHR "probable cause" determination, later reversed, is enough to

Moreover, to the extent plaintiff may claim a limitation with respect to work,

> to show substantial limitation in this activity under the ADA a plaintiff must prove that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."

*McDonald*, 786 F. Supp. 2d at 609 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). However, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Muller v. Costello*, 187 F.3d 298, 313 (2d Cir. 1999) (internal quotation marks and citation omitted). Here, Morris has not shown that his alleged impairment significantly restricted his ability to perform a class of jobs, or a broad range of jobs in various classes, during the relevant time period. He has presented no evidence to suggest that he was disqualified from performing even the essential functions of his own job. By his own account, when he

---

precluded summary judgment, but an initial finding which does no more than simply repeat facts alleged elsewhere and conclusorily states that the facts reflect discrimination does not create a genuine issue of material fact. This is particularly so where, as here, factual determinations are entirely absent from the initial determination.

*Hines v. City of New York*, 159 F.3d 1346, 1998 WL 514323, at *2 (2d Cir. 1998) (summary order) (citing *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (holding Commission's probable cause finding not sufficiently probative to create a genuine issue of fact on age discrimination claim)).

returned to work in June 2009, he was "for the most part" able to perform the essential functions of his job title. (Def. 56.1 ¶ 37.) He described "lifting and reaching" as his "biggest problem," but he performed overhead work to the best of his ability. (*Id.* ¶¶ 38–39.) This uncontroverted evidence record precludes any rational finding that plaintiff's alleged impairment significantly limited his ability to perform a class of jobs or a broad range of jobs in various classes. *See, e.g.*, *Young*, 599 F. Supp. 2d at 225–26 (finding that plaintiff's ability to maintain a fulltime job that is apparently similar to his previous job undermines the argument that plaintiff is significantly restricted in working); *see also Ongsiako v. City of New York*, 199 F. Supp. 2d 180, 185–86 (S.D.N.Y. 2002) (finding absence of evidence "from which a rational juror could infer that [plaintiff's] impairment precluded him from performing a broad class of jobs," where evidence "leads to only one rational inference: plaintiff's back impairment . . . prevented him only from working as a City construction laborer or in other jobs for which heavy lifting was an essential function"); *Gittens*, 19 F. Supp. 2d at 111 (granting summary judgment and finding that plaintiff has "failed to plead that he has a disability within the meaning of the ADA" where "plaintiff has not been limited from employment in general, and in fact has remained employed by defendant").

In sum, the Court concludes that plaintiff has failed to submit evidence that raises a genuine issue of fact to whether he suffered from a disability, prior to July 23, 2009, within the meaning of the ADAAA. Plaintiff was able to perform his alleged major life activities, including his own pre-surgery job requirements, with little to no restriction. There is no medical evidence to the contrary. For these reasons, the Court concludes that plaintiff has failed to produce evidence from which a rational jury could

conclude that his alleged impairment with respect to a major life activity was substantially limiting. Accordingly, even construing the evidence most favorably to plaintiff, he cannot demonstrate a disability under subsection one of the ADAAA for the time period before July 23, 2009. *See Graham*, 2013 WL 5445736, at *14–15 (finding that plaintiff did not suffer from disability under ADAAA definition based upon own testimony and lack of any medical evidence to support contrary finding).

### ii.    The "Record" of a Disability Prong

Even if a plaintiff cannot show a substantial limitation of a major life activity, she still may be able to establish an ADA-qualifying disability if she can show "a record" of such an impairment. *See* 42 U.S.C. § 12102(1)(B). According to the Equal Employment Opportunity Commission ("EEOC"), this "part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." *Colwell*, 158 F.3d at 645 (quoting 29 C.F.R. pt. 1630 App., § 1630.2(k)) (emphasis added). In other words, "a record reflecting a plaintiff's classification as disabled for other purposes or other standards is not enough." *Id.*

Morris claims that "[t]here are numerous medical records establishing [his] disability, and the Town of Islip were fully aware of [his] injuries and limitations." (Opposition, at 9.) This is insufficient, because plaintiff points to no supporting documentation in the record for the time period at issue. *See Jeffries v. Verizon*, No. 10–CV–2686(JFB)(AKT), 2012 WL 4344197, at *10 (E.D.N.Y Aug. 31, 2012) ("District courts in the Second Circuit have repeatedly held that a plaintiff's personal testimony which describes the alleged limits that affect a major life activity, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA." (quoting *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 301 (S.D.N.Y. 2003)) (internal quotation marks omitted); *Cody v. Cnty. of Nassau*, 577 F. Supp. 2d 623, 642 (E.D.N.Y. 2008) (concluding that plaintiff's "record of impairment" claim fails, in part, because plaintiff "offers no evidence to support a finding that she has a record of an impairment that substantially limits a major life activity," and that "the only statement offered by plaintiff that even addresses this argument is contained in the affidavit of her counsel"). Moreover, even if plaintiff had provided such materials, records of hospitalization or other medical treatment do not per se establish a record of an ADA-qualifying disability; rather, the evidence must establish a physical impairment that substantially impaired a major life activity. *See, e.g.*, *Colwell*, 158 F.3d at 645 (record of previous hospital stay did not, by itself, constitute a record of impairment); *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 615 (5th Cir. 2001) (health screening form, which indicated that new employee was under care of physician and had undergone surgery, did not show that plaintiff's impairment substantially limited any major life activity, and therefore, was insufficient as record of disability); *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1229–30 (11th Cir. 1999) (employer record that employee missed work following heart attack and in following years did not establish that employee had record of disability); *Dicara v. Conn. Rivers Council*, 663 F. Supp. 2d 85, 93 (D. Conn. 2009) (noting that fact that employee underwent surgery and was hospitalized was insufficient to create record of substantially

limiting impairment). Finally, as noted *supra*, Dr. Dines authorized plaintiff's return to work, without indicating that plaintiff had any disability or limitations or restrictions. Dr. Dines also refused to provide plaintiff with a letter indicating that he was limited or restricted in any way. (Def. 56.1 ¶ 29.)

Accordingly, even construing the record in plaintiff's favor, the first, third, and fifth causes of action cannot survive summary judgment, because no rational jury could find that plaintiff, between his return to work and departure in late July 2009, had a physical impairment that substantially affected a major life activity, or that plaintiff had a record of impairment, particularly where plaintiff's own treating physician refused to provide such evidence.

### b. Alternative Grounds

The Court's analysis of the first three discrimination claims may properly end here, because plaintiff has failed the first requirement of such claims. *See Cody*, 577 F. Supp. 2d at 643 (concluding that because plaintiff had failed to show she had an ADA-qualifying disability under her disability discrimination claim, her reasonable accommodation claim could not prevail). The Court, however, in an abundance of caution, will address the other grounds raised by the defendant. As detailed below, the Court concludes that, even assuming *arguendo* that there was sufficient evidence from which plaintiff could establish that he had a disability within the meaning of the ADAAA, plaintiff's pre-July 23, 2009 claims also fail on several other grounds: (1) no rational jury find that defendant failed to provide plaintiff with a reasonable accommodation; (2) no rational jury could find that plaintiff's essential job functions did not include overhead work; and (3) no rational jury could find that the temporary denial of a paid leave day was an adverse employment action (or retaliatory).

### i. Failure to Accommodate Claim

With respect to a claim under the ADA for failure to accommodate, an employer may be liable if it "fails to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is . . . an employee.'" *Cody*, 577 F. Supp. 2d at 643 (quoting *Sussle*, 269 F. Supp. 2d at 312). "A plaintiff can state a claim for discrimination based upon an employer's failure to accommodate her disability by alleging facts showing: (1) that she has a disability within the meaning of the [ADA]; (2) that the defendants, who are covered by the ADA, had notice of her disability; (3) that with reasonable accommodations she could perform the essential functions of the position sought; and (4) that defendant refused to make such accommodations." *Feeley v. N.Y.C. Police Dep't*, No. 97-CV-02891-RJD, 2001 WL 34835239, at *9 (E.D.N.Y. Sept. 4, 2001). Once a plaintiff has set forth a prima facie case, "the burden shifts to the employer to demonstrate that the employee's proposed accommodation would result in an undue hardship." *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 360 (E.D.N.Y. 2012). For the following reasons, and assuming that plaintiff had a disability and the Town had notice of the disability, the accommodation claim cannot survive summary judgment because plaintiff does not show that, "even if reasonable accommodations were needed in order for [him] to complete [his] essential job functions (which, based on plaintiff's own testimony, seems clear was not, in fact, the case), defendant did not provide [him] with such." *Graham*, 2013 WL 5445736, at *19 (footnote omitted).

During his deposition, plaintiff admitted that he was able to perform the core functions of an MMIII upon his return, that he was able to perform overhead work, and that he only requested helpers if there was a "big" job for him to do. (Def. 56.1 ¶¶ 30, 32, 33.) He also admitted that when he did request a helper, the Town provided one unless "there was some freak thing where a lot of other people were out or something like that." (*Id.* ¶ 34.) The Town's records confirm that plaintiff had a helper on twenty of the twenty-nine days he worked after his return in June 2009. The only other individual sharing plaintiff's title and responsibilities had helpers on nine of thirty-one days. The Court also notes that there is no evidence that plaintiff specifically requested help because of an impairment, rather than because there was a "big" job for him to do, which also weighs against a finding of failure to accommodate. *See Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 162 (3d Cir. 1999) (describing possible actions that might reflect interactive process between employer and employee as "meet[ing] with the employee who requests an accommodation request, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered [the] employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome"). Thus, no reasonable factfinder could conclude that the Town did not honor, where feasible, plaintiff's requests for accommodation (if any).[9]   Accordingly, based on the uncontroverted evidence, including plaintiff's own testimony, the Court grants summary judgment to defendant on the failure to accommodate claim on this ground, as well.

ii.    Assignment of Essential Job Function

Plaintiff claims that he suffered an adverse employment action because he was assigned a greater percentage of overhead work after his injury. (Opposition, at 13.) This does not establish an adverse employment action sufficient to support the third cause of action. "Adverse employment actions include discharge, refusal to higher, refusal to promote, demotion, reduction in pay, and reprimand." *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012); *see also Graham*, 2013 WL 5545736, at *22 (explaining that, for purposes of retaliation claim, adverse employment actions include termination of employment, demotion, less distinguished title, material loss of benefits, or significantly diminished material responsibilities). "Courts have continuously found that employers are not required to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability." *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632–33 (6th Cir. 1999) (citing *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir. 1996)).

Therefore, no reasonable factfinder could conclude that plaintiff's essential job functions did not include these duties and that the Town impermissibly assigned plaintiff such work. Moreover, there is no

---

[9] Plaintiff argues that "[p]rior to the injury, he had a helper nearly every day, especially when he was doing any sort of sizeable job. After he returned subsequent to the first injury, he was sometimes denied helpers under the guise of helpers being needed elsewhere, only to find out later that said helpers were assigned where they were not needed to prevent Mr. Morris from getting the help he needed."

(Opposition, at 13.) Plaintiff, however, points to no admissible evidence to support this conclusory allegation. Any temporal proximity, standing alone, cannot overcome defendant's showing and plaintiff's own testimony.

evidence that would allow the factfinder to compare the distribution of plaintiff's work before and after his injury to ascertain the merits of the above allegation. Accordingly, the Court grants summary judgment to defendant on plaintiff's third cause of action on this ground, as well.

### iii.    Emergency Personal Day

Finally, the Court concludes that the temporary denial of the paid leave day, which the Town later rescinded, does not constitute an adverse employment action sufficient to sustain a discrimination claim as a matter of law. *See, e.g.*, *Lieberman v. Reisman*, 857 F.2d 896, 900 (2d Cir. 1988) (stating that where defendants have denied plaintiff pay for compensatory and vacation time, "to survive a motion for summary judgment, plaintiff must present evidence demonstrating that she was entitled to and denied a benefit, and that the reason for that denial was [unlawful discrimination]"); *Kalp v. Kalmon Dolgin Affiliates of Long Island Inc.*, No. 11-CV-4000 (JG), 2013 WL 1232308, at *6 (E.D.N.Y. Mar. 27, 2013) ("The denial of a single vacation request, without any indication that there was an absolute prohibition against plaintiff taking any vacation time, is not a material adverse employment action. . . . Kalp has not demonstrated that the denial of her vacation request was a complete bar to her taking vacation. In fact, she took March 7, 2011 as a vacation day." (internal quotation marks and citation omitted)). The uncontroverted evidence in the record is that, in initially denying one day of paid leave, defendant was applying a written policy that was part of the Collective Bargaining Agreement, which required an explanation for a request for a paid emergency personal day. Specifically, it is undisputed that plaintiff initially provided no explanation other than to state, "I took an emergency personal day," and his request for one day paid leave

was denied. After filing a grievance and providing an explanation at the hearing for his request to use an emergency personal day, the denial was rescinded, and the eight hours of pay that had been docked for using the day without an explanation were restored to him. Under these circumstances, no rational jury could find that plaintiff suffered an adverse employment action, either under a disability discrimination claim, or under the more liberal standard for adverse action under a retaliation claim. Moreover, plaintiff points to nothing to indicate that defendant's legitimate, non-discriminatory reason for the temporary denial was a pretext for discrimination or for retaliation. Accordingly, the Court also grants summary judgment to defendant on the fifth cause of action on these independent grounds.

### 2.    Claim 7

The seventh cause of action alleges that the Town discriminated against plaintiff by directing him to come in to be evaluated for light duty assignments "when it knew or should have known" that he "was totally disabled and unable to work," and for discharging him without proper notice. (Complaint ¶ 62.)[10] The claim covers events subsequent to July 23, 2009.

As a threshold matter, the claim fails because it is undisputed that, as a result of the July 23, 2009, injury, plaintiff was not otherwise qualified to perform the essential functions of his job, with or without a reasonable accommodation. *See Shannon*, 332 F.3d at 99. "Essential functions" are defined under EEOC regulations to mean the "'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" *Stone v. City of*

---

[10] In his opposition, plaintiff only addresses the light duty requests, not his discharge. (*See* Opposition, at 19–21.) Plaintiff also does not address most of defendant's arguments for summary judgment.

*Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (citing 29 C.F.R. § 1630.2(n)(1) (1996)). Plaintiff testified that since July 23, 2009, he has been incapable of performing his duties, even with a helper (Def. 56.1 ¶ 54), and medical evidence supports the conclusion that plaintiff is totally disabled (*id.* ¶¶ 55, 56). Plaintiff also told the State's examining physician that he is unable to perform his job functions. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("[A] plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation."). Thus, because plaintiff was not "otherwise qualified" subsequent to July 23, and he does not proffer a sufficient explanation, plaintiff cannot establish a prima facie case of disability discrimination under the ADA.

In addition, according to the Town, the predicate for its requests to evaluate plaintiff for light duty assignments was a provision in the Collective Bargaining Agreement between the Town and its workforce. Even assuming *arguendo* that plaintiff otherwise was qualified to perform the essential functions of his job, the enforcement of such a provision cannot support a claim of discrimination based on disability. *See Cioce v. Cnty. of Westchester*, 128 F. App'x 181, 184 (2d Cir. 2005) ("Even assuming arguendo that his allegations support his claim that he is disabled as that term is defined under the ADA, Cioce's allegations and submitted evidence indicate that his receipt of benefits for his injuries—pursuant to the collective-bargaining agreement ("CBA") between Westchester County and the Correction Officers Benevolent Association—was terminated because of his failure to submit to independent medical examinations as required by the CBA, and not because of his disability. The fact that

Cioce disagreed as to whether he was required to submit to these examinations does not support his claim of discrimination based on his disability."); *Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 321 (S.D.N.Y. 2002) (finding that requests for medical evaluations to ascertain fitness to work all three shifts as required by job was not adverse employment action under ADA because requests did not materially change plaintiff's working conditions).

Similarly, defendant claims that plaintiff was separated from his employment pursuant to N.Y. Civil Service Law § 71, which "permits a civil service employer to terminate an employee who has been separated from service for more than one year by reason of disability resulting from occupational injury." *O'Leary v. Town of Huntington*, No. 11-CV-3754 (JFB)(GRB), 2012 WL 3842567, at *12 (E.D.N.Y. Sept. 5, 2012) (quoting *Santiago v. Newburg Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 195 (S.D.N.Y. 2006)). This provision is a legitimate, non-discriminatory basis for the termination. *Hatter v. Fulton*, No. 92 CIV. 6065(WK), 1997 WL 411623, at *7 (S.D.N.Y. 1997) (stating that upon defendant's assertion of right to terminate under Civil Service Law § 71, burden shifts to plaintiff to show that proffered reason was pretextual), *aff'd sub. nom. Hatter v. N.Y.C. Housing Auth.*, 165 F.3d 14 (2d Cir. 1998). "No presumption of discrimination arises when an employer makes a decision explicitly provided for by the Civil Service Law. *Bresloff-Hernandez v. Horn*, No. 05 Civ. 0384(JGK), 2007 WL 2789500, at *6 (S.D.N.Y. Sept. 25, 2007) (citing *Syken v. New York*, 02 Civ. 4673, 2006 WL 3771095, at *9 (S.D.N.Y. Dec. 21, 2006)). Plaintiff has not presented any evidence that defendant's proffered reason was pretextual.

Lastly, the discharge-related claim also fails because plaintiff has not exhausted his

administrative remedies by raising a termination claim before the NYSDHR or EEOC. To bring a Title VII discrimination claim in federal court, a plaintiff must first exhaust administrative remedies by filing an administrative charge alleging discrimination within 300 days of the alleged discriminatory conduct. *O'Grady v. Middle Country Sch. Dist. No. 11*, 556 F. Supp. 2d 196, 199 (E.D.N.Y. 2008) (citing *Ruhling v. Tribune Co.,* No. 04 Civ. 2430(ARL), 2007 WL 28283, at *8 (E.D.N.Y. Jan. 3, 2007)). This statutory filing period is "analogous to [ ] statute[s] of limitations," *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996), and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 00 Civ. 6307(KMK), 2007 WL 259937, at *6 (S.D.N.Y. Jan. 29, 2007); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006).

Nevertheless, "'claims that were not asserted before the EEOC [or an appropriate State or local agency] may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). "Reasonably related conduct is that 'which would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Id.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001)); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (stating that claim is reasonably related where "administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised"). In determining whether a claim is "reasonably related" to the EEOC charge, "'the focus should be on the factual allegations made in the [EEOC] charge itself'" and on whether those allegations "gave the [EEOC] 'adequate notice to investigate'" the claims asserted in court. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201–02 (2d Cir. 2003)).

Plaintiff's termination allegations arose subsequent to the filing of his NYSDHR complaint. There is no evidence that plaintiff ever brought a termination allegation to the NYSDHR and EEOC, and the Court concludes that such an allegation is not "reasonably related" to the other discrimination allegations in the April 2009 NYSDHR complaint. As a matter of law, then, plaintiff's claim expands the scope of the charge to encompass "new unlawful employment practices or bases for discrimination," rather than "additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (citations omitted); *see Lyles v. District of Columbia*, 777 F. Supp. 2d 128, 136 (D.D.C. 2011) ("Plaintiff's EEO charges outline three allegedly retaliatory acts of discrimination. The first is denial of promotions, the second is a threat to place plaintiff on leave, and the third is plaintiff's reassignment to the Day Treatment Program. As neither complaint raises the elimination of plaintiff's position in any way, the current claim has not been exhausted."). Accordingly, the Court grants summary judgment to defendant on plaintiff's discharge-related discrimination claim on this ground, as well.

## B. Retaliation Claims

### 1. Legal Standard

Retaliation claims brought under the ADA are examined under the same *McDonnell Douglas* burden-shifting framework. *See, e.g., Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To establish a *prima facie* case of retaliation under the ADA, the plaintiff must show the following elements: "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Id.* If the plaintiff establishes a prima facie case of unlawful discrimination, the burden then shifts to the defendant to set forth "some legitimate, nondiscriminatory reason" for the complained-of conduct. *McDonnell Douglas*, 411 U.S. at 802; *see also Fincher*, 604 F.3d at 720 (stating that where the plaintiff succeeds in establishing a prima facie case, "then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory"). Where the defendant articulates such a reason, then the presumption of discrimination is rebutted, and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citation omitted). The burden then shifts back to the plaintiff to show, without the benefit of any presumption, that a reasonable jury could conclude by a preponderance of the evidence that the employer's explanation is merely a pretext for impermissible retaliation. *Treglia*, 313 F.3d at 721.[11] To meet this burden, the plaintiff may rely on evidence presented to establish the *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–101 (2003). It is insufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, *i.e.*, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 207–08 (S.D.N.Y. 2000).

The Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from and broader than the standard in the Title VII

---

[11] Following the Supreme Court's decisions in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), and *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009), it is an open question in this Circuit whether an ADA plaintiff must now show that disability discrimination (or the plaintiff's protected activity, in a retaliation claim) was a but-for cause of the adverse employment action. *See Castro v. City of New York*, --- F. Supp. 2d ----, No. 10-CV-4898 (NG) (VVP), 2014 WL 2582830, at *14 n.34 (E.D.N.Y. June 5, 2014) ("[T]he question of whether the heightened, 'but-for' standard of causation for Title VII retaliation claims . . . applies to claims asserted under the ADA, is one that has not yet been addressed by the Second Circuit."); *see also Tse v. New York Univ.*, No. 10-CV-7207 (DAB), 2013 WL 5288848, at *18 n.18 (S.D.N.Y. Sept. 19, 2013); *Najjar v. Mirecki*, No. 11-CV-5138 (KBF), 2013 WL 3306777, at *7 (S.D.N.Y. July 2, 2013). This Court need not resolve that issue in this case because, as discussed *infra*, plaintiff has not produced sufficient evidence from which a rational jury could find that he was retaliated against, even under the "motivating factor" standard.

discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). The same definition applies to retaliation claims under the ADA. *Platt v. Inc. Vill. of Southampton*, 391 F. App'x 62, 64 (2d Cir. 2010); *Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 90 (2d Cir. 2010).

### 2.  Application

In his opposition, plaintiff only addresses the denied emergency personal day and the request that he report for a light duty evaluation. (Opposition, at 18.) Although it appears that plaintiff has abandoned his other claims, *see Marache v. Akzo Nobel Coatings, Inc.*, No. 08. Civ. 11049, 2010 WL 908467, at *15 (S.D.N.Y. Mar. 12, 2010) (finding a claim abandoned by virtue of plaintiff's failure to address it in opposition to motion for summary judgment), out of an abundance of caution, the Court addresses all the retaliation allegations. For the following reasons, the Court concludes that plaintiff's retaliation claims are without merit.

### a.  Alleged Failure to Provide a Helper

As discussed *supra*, plaintiff's testimony and the Town's uncontroverted records show that plaintiff was provided with a helper unless none were available. Thus, there is no evidence that defendant actually took negative employment actions against plaintiff, or that there was any change in his working conditions, when he did not have a helper. Moreover, defendant's "alleged failure to accommodate [plaintiff's] disability subsequent to an ADA . . . protected request cannot be bootstrapped into a viable disability retaliation claim." *Missick v. City of New York*, 707 F. Supp. 2d

336, 356–57 (E.D.N.Y. 2010) (citing *Gomez v. Laidlaw Transit, Inc.*, 455 F. Supp. 2d 81, 90 (D. Conn. 2006)); *Gomez*, 455 F. Supp. 2d at 90 ("To the extent plaintiff claims that defendant's ongoing failure to accommodate her constituted retaliation, this claim is also insufficient as a matter of law. Requesting accommodation inevitably carries the possibility that the employer will not honor the request. If the prospect that an employer might not honor the request would deter a reasonable employee from even making the request, reasonable employees would not request accommodation. For this reason, a failure to accommodate cannot constitute retaliation for an employee's request for accommodation."). The Court also notes that, even assuming plaintiff established a prima facie case of retaliation based on temporal proximity, he fails to proffer any evidence that defendant's legitimate non-discriminatory reason—no helper was provided on days when no MMI was available—is a pretext for retaliation.

### b.  Overhead Work

Similarly, there simply is no evidence that plaintiff's NYSDHR complaint in April 2009 motivated defendant to assign plaintiff overhead and elevated work after he returned from surgery. For instance, there is no evidence whatsoever that the Town disproportionately assigned plaintiff such projects after he complained to the NYSDHR, much less any statements or evidence that would allow a reasonable jury to conclude that the existence of such projects was a pretext for retaliation.

### c.  Emergency Personal Day

As discussed *supra*, after plaintiff was denied the paid leave day, he filed a grievance, was afforded a hearing, and had the denial reversed, with ultimately no loss to him. Plaintiff does not dispute the existence of the Town's policy with respect

to emergency days. In his opposition, plaintiff states that other employees were allowed to take emergency leave without offering any details. (Opposition, at 19.) Plaintiff, however, does not show that those employees requested the leave fewer than three days before taking it, and he ignores the documentary evidence that supports defendant's claim that they neutrally applied the policy to all employees. Therefore, the Court concludes that plaintiff fails to establish a prima facie case of retaliation with respect to the emergency personal day. *See Chin-McKenzie v. Continuum Health Partners*, 876 F. Supp. 2d 270, 286 (S.D.N.Y. 2012) ("It is, simply, not a material adverse change in a term or condition of employment to require an employee to go to the EHS or ED after having an on-the-job allergy attack, to notify a supervisor before leaving duty, or to undergo a fitness examination. Nor did Chin–McKenzie incur a materially adverse change in work conditions when she received an "average" performance rating, was compelled to document the reason for a bereavement leave, or was denied requested days off. These are the sort of 'minor annoyances' that do not rise to the level of actionable retaliation under Title VII." (internal citation and footnote omitted)); *see also Pierre v. Napolitano*, 958 F. Supp. 2d 461, 480 (S.D.N.Y. 2013) (concluding that temporary denial of Law Enforcement Availability Pay benefits, which was rescinded as soon as supervisor realized error in interpretation of preconditions for benefits, "were more disruptive than a mere inconvenience" and did not "demonstrate that [the plaintiff] suffered an adverse employment action" (citations and internal quotation marks omitted)). Moreover, even if plaintiff had established prima facie case, he proffers no proof to suggest that his NYSDHR filing motivated defendant to initially deny the request.

d.     "Light Duty" Evaluation Requests

Plaintiff proffers no evidence or authority that the requests for him to discuss the potential of light duty from August 2009 through January 2010 constituted "an employment action disadvantaging the plaintiff." *Terry*, 336 F.3d at 141 (2d Cir. 2003). As a threshold matter, it is not even clear from the record that plaintiff complied with these requests by coming to the office to be evaluated. It appears from his deposition that he simply submitted a note from his doctor saying he was unable to come to work. (Morris Dep. at 228.) Given the lack of any consequences to plaintiff, no rational jury could find that these requests would reasonably dissuade an employee from making a charge of discrimination. Moreover, it is uncontroverted that NYSDHR found that the Town's attempt to monitor and evaluate plaintiff's physical condition and capacity to perform light duty work was in accordance with the procedures in the Collective Bargaining Agreement. (Def. 56.1 ¶ 29.) Plaintiff proffers no admissible evidence to show this was a pretext for retaliation.[12]

Therefore, even viewing the facts in the light most favorable to plaintiff, the Court concludes that no reasonable jury could find that defendant retaliated against plaintiff in response to his NYSDHR complaint in April 2009.[13] Accordingly, the Court grants

---

[12] Plaintiff claims that his union representative told plaintiff that he would be left alone if he dropped his claims with NYSDHR. (Opposition, at 21.) This testimony is hearsay, and plaintiff's argument that the representative was speaking on behalf of a member of the Town is wholly speculative and cannot establish a genuine dispute of material fact.

[13] In his opposition papers and at oral argument, plaintiff alleged that defendants' investigators conducted surveillance of his activities in March and April 2009, while he was on workers' compensation because of surgery. As a threshold matter, although these allegations are contained in the background

summary judgment to defendant on plaintiff's retaliation claims.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment in its entirety. Plaintiff's complaint is dismissed in its entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 22, 2014
        Central Islip, NY

* * *

Plaintiff is represented by Damon Andrew Hagan, Mayer, Ross & Hagan, 178 East Main Street, Patchogue, NY 11772. Defendant is represented by Ernest Stolzer, Jessica Moller, Lauren Darienzo, and Richard Finkel, Bond Schoeneck & King, PLLC, 1399 Franklin Avenue, Suite 200, Garden City, NY 11530.

---

section of the complaint, they are not mentioned in connection with any of the specific causes of action. Moreover, to the extent plaintiff has attempted to assert a cause of action based upon this alleged conduct, defendant correctly argues that those same allegations were raised before the NYSDHR in plaintiff's first complaint and, subsequent to its dismissal based upon a finding of no probable cause, plaintiff did not bring a timely action based upon those allegations. Thus, any such claim would be time-barred. In any event, those allegations could not be the basis for a plausible retaliation claim. Plaintiff alleges that the surveillance, including the March 24, 2009 incident at the school, began *prior* to his April 2009 filing with the NYSDHR. Thus, on the issue of causation, no rational jury could find that surveillance that began prior to the filing was retaliation for that filing.